UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| Joseph (Joey) Luzier, III,<br><br>    Plaintiff,<br><br>v.<br><br>Sergeant Cleveland Wheeler, Sergeant Dominic Lane, Officer Ryan Hines, and Officer Luis D. Ocasio,<br><br>    Defendants. | Case No. 6:24-cv-916-PGB-RMN<br><br>**Demand for Jury Trial** |

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Joseph (Joey) Luzier, III, asserts claims under the Eighth Amendment to the United States Constitution against Defendants Sergeant Cleveland Wheeler, Sergeant Dominic Lane, Officer Ryan Hines, and Officer Luis D. Ocasio, each in their individual capacities. Plaintiff alleges as follows:

### Jurisdiction & Venue

1.   Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the Eighth Amendment to the United States Constitution.

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b), this being the district where the claim arose and where Defendants conduct business.

4. All conditions precedent to this lawsuit, including exhaustion of administrative remedies, have occurred, been performed, or been waived.

## Parties

5. At all times material hereto, Plaintiff Joseph (Joey) Luzier, III was a transgender woman in the custody and care of Florida Department of Corrections (FDC) at Tomoka Correctional Institution in Volusia County, Florida, a men's prison.

6. At all times material hereto, Defendant Sergeant Cleveland Wheeler was a correctional officer employed by FDC at Tomoka C.I. and was acting under color of law. Sergeant Wheeler is being sued in his individual capacity.

7. At all times material hereto, Defendant Sergeant Dominic Lane was a correctional officer employed by FDC at Tomoka C.I. and was acting under color of law. Sergeant Lane is being sued in his individual capacity.

8. At all times material hereto, Defendant Officer Ryan Hines was a correctional officer employed by FDC at Tomoka C.I. and was acting under color of law. Officer Hines is being sued in his individual capacity.

9. At all times material hereto, Defendant Officer Luis D. Ocasio was a correctional officer employed by FDC at Tomoka C.I. and was acting under color of law. Officer Ocasio is being sued in his individual capacity.

**Factual Allegations**

10. On or about August 25, 2020, Officer Ocasio escorted Plaintiff from Y Dormitory to E Dormitory at Tomoka C.I, where Plaintiff, a transgender woman in the men's prison, was to remain in a cell pending review for placement in "Protective Management"—a status "for the protection of inmates from other inmates in an environment as representative of that of inmates in general population as is safely possible." R. 33-602.221, Florida Admin. Code.

11. Prior to being placed in a cell, Officer Ocasio took Plaintiff to the E Dormitory Sergeant's Office, where Officer Hines and Sergeant Wheeler awaited. In the office, Sergeant Wheeler looked Plaintiff up in the FDC system and learned about Plaintiff's criminal charges. It was at this time that Officers Ocasio, Hines and Sergeant Wheeler learned that Plaintiff was a registered sex offender and

had a conviction related to battery on a law enforcement officer. Sergeant Wheeler told Plaintiff he was going to find him "a perfect bunky."

12. After reviewing the FDC database, Sergeant Wheeler told Plaintiff that he would place Plaintiff in cell E3110 with an inmate named Rene Rivas. Under FDC's system at the time, Rivas was classified as "IPD," or "Identified Predator," and Plaintiff was classified as "IPY," or "Identified Prey." FDC's rules prohibit "IPY" and "IPD" prisoners from being celled together, which Defendants each knew.

13. Sergeant Wheeler told Plaintiff that Rivas had a documented history of sexually assaulting his cellmates and that the two would get along well together, implying that he was sending Plaintiff to Rivas to be sexually assaulted.

14. Officers Hines and Ocasio were present for this conversation but failed to do anything to stop Sergeant Wheeler from placing Plaintiff with Rivas. According to FDC, prior to August 25, 2020, Rivas had been the suspect in two sexual battery investigations at Tomoka C.I. Sergeant Wheeler purposefully selected this cell because he believed that Rivas would sexually assault Plaintiff.

15. Plaintiff told Sergeant Wheeler and Officers Hines and Ocasio—the latter two officers were still present in the Sergeant's Office—that as a transgender prisoner who had previously been sexually assaulted, Plaintiff was afraid of being placed with Rivas and did not want to be placed with him, as Sergeant Wheeler had overtly told Plaintiff he was being put into that cell with a sexual predator with the understanding that Rivas would sexually assault Plaintiff.

16. Sergeant Wheeler told Plaintiff that Plaintiff had no choice and that if she refused to be placed with Rivas, Sergeant Wheeler would administer chemical agents on Plaintiff and force her into the cell. Officers Hines and Ocasio were present for this conversation and did not do anything to stop Sergeant Wheeler from continuing to make these threats, nor did they take any steps to prevent Plaintiff from being placed in a cell with Rivas despite knowing that Plaintiff was "IPY" and Rivas was "IPD" and that Plaintiff, as a transgender prisoner, was at increased risk of sexual violence from being placed in that cell.

17. Cell E3110, like other similar cells in E Dormitory, has an upper and lower bunk, meaning that only two prisoners can be assigned to the cell at any given time. Because Sergeant Wheeler specifically wanted to place Plaintiff with

Rivas, he overrode the system so that Plaintiff would be placed in that cell even though both bunks were already assigned:



18. Officer Ocasio then escorted Plaintiff downstairs to Wing 3. As Officer Ocasio escorted Plaintiff into Wing 3 they both heard an inmate named Kenneth McElwaney yell out of his cell door that he was putting a $2,500 "hit" on Plaintiff's life because Plaintiff had previously reported McElwaney for sexual assault. The "hit," or bounty, was heard throughout the wing, including by Rivas.

19. Plaintiff told Officer Ocasio that he feared being placed in a cell with Rivas, who was an "IPD" inmate and who Ocasio knew from Sergeant Wheeler had a history of sexual assault and was likely to sexually assault him given that Plaintiff was a transgender inmate, to which Officer Ocasio responded by saying

6

"I don't give a shit."

20. Officer Ocasio then placed Plaintiff in cell E3110 with Rivas despite knowing that (1) Plaintiff was being evaluated for protective management status, (2) Plaintiff was a transgender prisoner, (3) Rivas was a known abuser and had been the suspect in two other investigated sexual batteries at Tomoka C.I., (4) Plaintiff was an "IPY" inmate and Rivas was "IPD," (5) Sergeant Wheeler purposefully overrode the system to place Plaintiff in a cell with Rivas so that Rivas would sexually assault Plaintiff, and (6) McElwaney had announced a bounty on Plaintiff's life. At that time, Officer Ocasio should have ensured that Plaintiff was placed in a cell by herself.

21. Sergeant Lane then came on shift in the wing. Sergeant Lane knew about the bounty on Plaintiff's life and that Sergeant Wheeler and Officers Hines and Ocasio had purposefully placed Plaintiff with Rivas despite her pending protective management status, Rivas' prior sexual battery cases, and that FDC rules prohibited Rivas and Plaintiff from being celled together, and that this placement was done for the express purpose for Rivas to sexually assault Plaintiff.

22. Sergeant Lane ordered everyone to strip to their boxers for showers. Plaintiff showed Sergeant Lane a pass authorizing Plaintiff—as a transgender woman—to shower separately pursuant to FDC policy. Sergeant Lane ignored the pass and FDC policy and ordered Plaintiff to shower with Rivas. Sergeant Lane told Plaintiff that he did not "see" transgender people like Plaintiff or "honor" their rights.

23. Plaintiff was forced to comply with Sergeant Lane's unlawful order upon threat of being subjected to chemical agents. Plaintiff was forced into a two-person shower with Rivas that was locked and had no privacy walls or screening. Plaintiff felt uncomfortable, violated, and afraid of what Rivas might do.

24. Plaintiff and Rivas were then returned to the cell, where that evening Rivas sexually assaulted Plaintiff, forcing her to perform oral sex on him and submit to anal sex by him as well as digital penetration while Rivas masturbated. Plaintiff was forced to do these sexual acts upon fear of death and bodily injury. At no time did Plaintiff consent to these sexual acts.

25. In fact, when Plaintiff told Rivas she did not want to engage in sexual activity with him, Rivas told Plaintiff she would either let Rivas engage in

these sexual acts or Rivas would accept McElwaney's bounty.

26. Rivas also threatened Plaintiff, telling her that he would kill her or have her killed if she told anyone about what happened in the cell. Plaintiff did not call for help because she believed the officers who purposefully put her in this cell with Rivas would ignore her pleas for help.

27. The next afternoon, when staff came to Plaintiff's cell for maintenance, Plaintiff declared a psychological emergency and refused to reenter the cell. Officer Hines—who was in the Sergeant's Office the day before when Sergeant Wheeler sadistically and maliciously chose Rivas as a cellmate to torture and sexually assault Plaintiff—arrived and threatened to administer chemical agents on Plaintiff.

28. Sergeant Owen was called because Plaintiff continued to refuse to go back into the cell. Once separated, Plaintiff told Sergeant Owen that Plaintiff need to file a PREA (or Prison Rape Elimination Act) report about what happened in the cell with Rivas.

29. After that, Plaintiff was examined by a Sexual Assault Response Team, DNA evidence was sent to the Florida Department of Law Enforcement, and the FDC Office of the Inspector General investigated Plaintiff's claims. The

DNA results supported that Rivas sexually assaulted Plaintiff.

30. Based on the evidence, Rivas was charged with sexual battery in violation of section 794.011(4)(b), Florida Statutes. That case remains pending in Volusia County—*State v. Rivas*, Case No. 2022-303621-CFDB.

## COUNT I

### Violation of 42 U.S.C. § 1983 – Failure to Protect
### (against all Defendants)

Plaintiff repeats and re-alleges paragraphs 1 through 30 above, as if fully set forth herein and further alleges:

31. Plaintiff is entitled to relief against defendants for their failure to protect her in violation of the Eighth Amendment to the U.S. Constitution.

32. The Eighth Amendment's prohibition on cruel and unusual punishments requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). The duty to protect encompasses "protect[ing] prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation marks omitted).

33. Plaintiff, a transgender woman in a male prison, who was awaiting a protective management determination, was incarcerated at Tomoka C.I. under conditions posing a substantial risk of serious harm. Specifically, because of her status and previous offenses, Defendants Wheeler, Ocasio and Hines purposefully placed Plaintiff in a cell with a violent offender suspected in several sexual batteries and told Plaintiff that she would enjoy being celled with him. They did this despite knowing that FDC rules prohibited Rivas and Plaintiff from being celled together. Sergeant Lane knew about the decision of his fellow officers to do this, knew that Plaintiff was transgender and at risk of sexual violence, and left Plaintiff in the cell with Rivas and forced Plaintiff to shower nude with Rivas.

34. Defendants, while acting under color of state law, unlawfully and without justification jointly and severally violated the Eighth Amendment when they, with sufficiently culpable state of mind, were deliberately indifference to the serious and present risks of placing Plaintiff in a cell with Rivas. Those officers also ignored those risks associated with the bounty that was placed on Plaintiff when she arrived in E Dormitory.

35. As a direct and proximate result of the failure to protect, Plaintiff sustained brutal and severe physical and mental injuries, as she was forced to perform oral sex on Rivas and be anally penetrated by Rivas, both with his penis and fingers.

36. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff seeks relief as set forth in her Prayer for Relief below.

## COUNT II

### Violation of 42 U.S.C. § 1983 – Failure to Intervene
### (against all Defendants)

Plaintiff repeats and re-alleges paragraphs 1 through 30 above, as if fully set forth herein and further alleges:

37. Plaintiff is entitled to relief against Defendants for their respective failures to intervene to stop each participating actor from placing and leaving Plaintiff in a cell with Rivas, in violation of the Eighth Amendment to the U.S. Constitution.

38. Defendants, while acting under color of state law, unlawfully and without justification jointly and severally violated the Eighth Amendment when they permitted each of the others, while acting under color of state law, to place Plaintiff in a cell with Rivas. Specifically, Officers Hines and Ocasio failed to intervene to stop Sergeant Wheeler from assigning Plaintiff to that cell. When Officer Ocasio took Plaintiff downstairs to the cell, Sergeant Wheeler and Officer Hines failed to intervene to stop Officer Ocasio from taking Plaintiff to the cell and failed to intervene to remove him from the cell. The next shift, Sergeant Lane failed to intervene to stop the other officers' plan to permit Rivas to sexually assault her.

39. As a direct and proximate result of the failure to intervene, Plaintiff sustained brutal and severe physical and mental injuries.

40. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff seeks relief as set forth in her Prayer for Relief below.

## COUNT III

### Violation of 42 U.S.C. § 1983 – Supervisor Liability
### (against Sergeant Wheeler)

Plaintiff repeats and re-alleges paragraphs 1 through 30 above, as if fully set forth herein and further alleges:

41.   At all times relevant, Sergeant Wheeler maintained a senior rank and supervisory authority over Officers Hines and Ocasio.

42.   As the ranking officer at the scene, Sergeant Wheeler ordered and directed Officers Hines and Ocasio, his subordinates, to act unlawfully.

43.   Specifically, Sergeant Wheeler ordered those officers to improperly cell Plaintiff with a known violent prisoner for his own sick, malicious, and nonpenological purposes, all in violation of the Eighth Amendment and clearly established law.

44.   Officers Hines and Ocasio followed the unconstitutional directives and placed Plaintiff with Rivas.

45.   Sergeant Wheeler's unconstitutional orders were motivated by evil intent to harm Plaintiff by callous or reckless indifference to her right to be free from sexual assault and battery.

46. As a direct and proximate result of the unlawful orders resulting in sexual assault and battery on Plaintiff, Plaintiff sustained brutal and severe physical and mental injuries.

47. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff seeks relief as set forth in her Prayer for Relief below.

## **Prayer for Relief**

Plaintiff Joseph (Joey) Luzier, III, demands the following relief against Defendants:

    A. Nominal damages;

    B. Compensatory damages;

    C. Punitive damages;

    D. Reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988 and any other applicable law; and

    E. Such other just and proper relief.

## Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

Dated: July 18, 2024

                                              Respectfully submitted,

                                              */s/ James M. Slater*
                                              James M. Slater (FBN 111779)
                                              Slater Legal PLLC
                                              2296 Henderson Mill Rd. #116
                                              Atlanta, Georgia 30345
                                              Tel: (305) 523-9023
                                              james@slater.legal

                                              *Attorneys for Plaintiff Joseph (Joey) Luzier, III*