UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Joseph (Joey) Luzier, III,

     Plaintiff,

v.

Sergeant Cleveland Wheeler, *et al.*,

     Defendants.

Case No. 6:24-cv-00916-PGB-RMN

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT HINES'S AND OCASIO'S MOTION TO DISMISS

Pursuant to Local Rule 3.01(c), Plaintiff Joseph (Joey) Luzier, III opposes

Defendants Ryan Hines's and Luis D. Ocasio's (collectively, "Defendants")

Motion to Dismiss (Doc. 27) her operative First Amended Complaint ("FAC")

(Doc. 25). As grounds, Plaintiff states:

## Introduction

This lawsuit involves the unconstitutional, shocking treatment of Plaintiff,

a transgender woman who was confined in Tomoka Correctional Institution, a

men's prison.  When moved to Defendants' dorm at Tomoka C.I., Defendants

participated in and failed to protected Plaintiff from a calculated plan to place

Plaintiff in a cell with a known sexual predator. According to the allegations in the FAC, these Defendants knew that Plaintiff could not be celled with this predator—Plaintiff was "identified prey" and the cellmate was an "identified predator"—, Sergeant Wheeler overrode the system to place Plaintiff in the cell with the predator, Plaintiff did not want to be in the cell with the predator and feared for her safety (but stopped vocalizing her fears because of threats she received from defendants), and there was a bounty on Plaintiff by another prisoner, which should have prompted Defendants to ensure that Plaintiff was celled alone. For all these reasons, Defendants violated Plaintiff's clearly established rights. The motion to dismiss should be denied.

## Relevant Factual Allegations

Plaintiff is a transgender woman, who, during the events material to this lawsuit, was confined to Tomoka Correctional Institution, a men's prison. FAC ¶ 10. On August 25, 2020, Plaintiff was taken by Officer Ocasio to E Dormitory, where she was pending placement in "protective management," which is a type of environment outside of general population for certain at-risk prisoners. *Id.* Officer Ocasio took Plaintiff to the Sergeant's Office, where Sergeant Wheeler, Officers Ocasio and Hines learned about Plaintiff's previous convictions and

history. *Id.* at ¶ 11. Based on that history—that Plaintiff was a sex offender and had a conviction for battery on law enforcement—Sergeant Wheeler overrode the Florida Department of Corrections' cell placement system and place Plaintiff—who was classified as "identified prey" or "IPY"—in a cell with a known sexual predator, who was classified as "identified predator" or "IPD." *Id.* at ¶¶ 12–13, 17.

Sergeant Wheeler told Plaintiff that the predator had sexually assaulted his other cellmates and that he was a "perfect bunky," implying that he was sending Plaintiff to the cell to be sexually assaulted. *Id.* at ¶¶ 11–13. Defendants Ocasio and Hines were present and heard this but failed to stop Sergeant Wheeler from placing Plaintiff with the predator. *Id.* at ¶ 14. Plaintiff told Defendants she was transgender and was the victim of sexual assault and that she was afraid of being placed with the predator, to which Plaintiff was told by Sergeant Wheeler that she would be gassed if she refused to get into the cell. *Id.* at ¶¶ 15–16.  Officers Ocasio and Hines were there, heard this, but did nothing. *Id.* at ¶ 16.

Officer Ocasio then took Plaintiff to the cell, despite knowing that she was pending "protective management" status and should not be celled with anyone and that the person she would be purposefully celled with was a sexual predator

who had victimized other cellmates, and that Plaintiff expressed fear of going

into the cell with that predator as a transgender woman and victim of sexual

violence. While taking Plaintiff to the cell, another inmate recognized Plaintiff

and yelled out to the entire dorm that he was placing a hit on Plaintiff. *Id.* at ¶ 18.

Plaintiff, Officer Ocasio, and the predator awaiting Plaintiff all heard this bounty.

Officer Ocasio then placed Plaintiff in the cell with the sexual predator, despite

hearing that there was a bounty on Plaintiff and knowing that she was supposed

to be celled alone pending "protective management" status and certainly not

celled with a sexual predator. *Id.* at ¶¶ 18–20.

As a result of placing Plaintiff in the cell with the predator, the predator

committed sexual assault and battery on Plaintiff. *Id.* at ¶¶ 24–26. The predator

was charged with sexual battery by the state attorney's office. *Id.* at ¶ 30.

## <u>Argument</u>

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide "more

than labels and conclusions" or "a formulaic recitation of the elements of a cause

of action," but she "does not need detailed factual allegations." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Instead, a

complaint must contain "enough facts to state a claim to relief that is plausible on

its face," *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015) (quotation

omitted), which can allow the court to draw the reasonable inference that the

defendant is liable for the alleged misconduct. *Waldman v. Comm'r*, 871 F.3d 1283,

1289 (11th Cir. 2017). This threshold "is not akin to a 'probability

requirement'"—the plaintiff must merely allege "'enough fact to raise a

reasonable expectation that the discovery will reveal evidence' of the claim." *Am.*

*Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*,

550 U.S. at 556). Factual content must allow the court to draw the reasonable

inference that the defendant is liable for the alleged misconduct. *Waldman*, 871

F.3d at 1289.

The Eleventh Circuit thus applies a "two-pronged approach" in evaluating

motions to dismiss: "1) eliminate any allegations in the complaint that are merely

legal conclusions; and 2) where there are well-pleaded factual allegations,

'assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief.'" *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 679 (2009)). This approach applies to all Rule 8(a) pleadings—

no heightened pleading standard exists for civil rights claims. *See Leatherman v.*

*Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

I.      **Plaintiff adequately pleaded constitutional violations.**

Defendants argue that Plaintiff's allegations fail to set forth constitutional violations under the Eighth Amendment. For the reasons explained below, they are wrong.

The Eighth Amendment's prohibition on cruel and unusual punishments requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). The duty to protect encompasses "protect[ing] prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation marks omitted). When a plaintiff invokes this principle in a lawsuit against prison officials, plaintiff's claims are known as "failure-to-protect" claims. *See Cox v. Nobles*, 15 F.4th 1350, 1357–58 (11th Cir. 2021). Similarly, under the Eighth Amendment, a prison guard may be liable for failing to take reasonable steps to protect an inmate from a constitutional violation committed by other prison officials. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002).

To succeed on a failure-to-protect claim, Plaintiff must satisfy three elements. *See id.* at 1358. First, she must show that she was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511

U.S. at 832). Second, she must show that the "prison official [had] a sufficiently culpable state of mind," amounting to "deliberate indifference." *Id.* (internal quotation marks omitted); *see also Wade v. McDade*, 106 F.4th 1251, 1256 (11th Cir. 2024) (en banc) (returning to the standard elucidated in *Farmer* for this element). Last, she must demonstrate causation, that is, that the constitutional violation caused her injuries. *Cox*, 15 F.4th at 1358. (citing *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014)).

Similarly, to state a claim of failure to intervene, a plaintiff must allege the following essential elements: (1) the defendant acted with deliberate indifference when he knew that a state employee was violating a constitutional right of the plaintiff; (2) defendant was in a position from which he reasonably could have intervened to protect plaintiff from the violation of his constitutional rights; and (3) the plaintiff suffered harm from the defendant's failure to intervene. *Skrtich*, 280 F.3d 1295 at 1302.

Here, Defendants assert that Plaintiff does not provide sufficient facts to "indicate Defendants were aware of a 'substantial risk of serious harm' to [Plaintiff] that went 'beyond mere possibilities.'" (Doc. 27 at PageID 144) (citation omitted). They say that it is not enough to protect a prisoner who says they are in

fear for their life. (*See id.*) They also assert that they can only be in a position to intervene if the constitutional violation occurs in their presence. (*See id.* at PageID 144-45).

But Plaintiff provides ample factual support for Defendants' failures to protect and/or intervene. This is not a case where Plaintiff is merely relaying her fear of being placed with a bunkmate or known predator. But Defendants knew that Plaintiff was transgender, was previously the victim of sexual violence, and they stood by while Sergeant Wheeler picked the "perfect bunky" for Plaintiff who was known to sexually assault his bunkmates. Plaintiff was pending protective management status, was not supposed to be celled with another prisoner, and they stood by idly while Sergeant Wheeler handpicked Plaintiff's punishment and overrode the FDC system to place Plaintiff in that cell.

This is not the mere possibility of harm. Defendants knew that Plaintiff, a transgender woman in a men's prison,[1] was not supposed to go into the

---

[1] It does not matter whether the risk to Plaintiff was "for reasons personal to h[er] or because all prisoners in h[er] situation face such a risk." *Farmer*, 511 U.S. at 843, 114 S. Ct. at 1982. As a transgender prisoner, Plaintiff was at heightened risk of harm at Tomoka C.I., and she expressed those concerns by seeking protective management status. *See id.* at 849 (citing *Farmer v. Carlson*, 685 F.Supp. 1335, 1342 (MD Pa. 1988) ("Clearly, placing plaintiff, a twenty-one year old transsexual, into the general population at [USP–]Lewisburg, a [high-]security institution, could pose a significant threat to internal security in general and to plaintiff in particular").

predator's cell and failed to do anything to stop her from going there, knowing the purpose was to send her there to be assaulted. Those are allegations that Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that Defendants "dr[ew] the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. In *Cox v. Nobles*, for example, the Eleventh Circuit held that a transgender prisoner had not met this element because she only alleged that she made a PREA complaint before being assaulted and the defendant had reviewed the document. That complaint "provided no clue about what the PREA complaint communicated." *Cox*, 15 F.4th at 1358. The panel could not tell from the complaint whether the PREA complaint informed her identity as a transgender person, whether she requested segregated housing, or communicated to the defendant that she believed she was in danger. In this case, Defendants knew Plaintiff was transgender, not to be celled with anyone awaiting protective management status, was a victim of sexual violence, was being placed in a cell—in violation of FDC rules—with a predator and was in fear for her life based on the statements Sergeant Wheeler made about why she was being placed in that cell. *See Stewart v. Johnson*, 2021 WL 3081882, at *3 (S.D. Ga. July 21, 2021) ("evidence of a policy violation may be evidence of deliberate

indifference"); *Hope v. Pelzer*, 536 U.S. 730, 743-44, (2002) (holding that official's disregard of prison regulation "provides equally strong support for the conclusion that they were fully aware of the wrongful nature of their conduct."). To say that Defendants only knew of a "mere possibility" of a serious risk of harm eviscerates any of the inferences that must be drawn from Plaintiff's facts under Rule 8.

Further, Officer Ocasio knew all that and learned that another prisoner placed a bounty on Plaintiff. Despite the entire dorm—including the predator— hearing that a prisoner was putting a bounty on Plaintiff's life, Officer Ocasio continued to bring Plaintiff to the predator's cell. He had sufficient knowledge of the serious risk but failed to protect Plaintiff. *See Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 622 (11th Cir. 2007) (explaining that there are established protocols for handling an inmate's life-threatening security concerns—immediate administrative segregation, protective management review).

In *Rodriguez*, the plaintiff had informed prison staff that members of his former gang had threatened to kill him upon his release into the prison's general population. The Eleventh Circuit panel concluded that he had alleged "a specific threat to his life by fellow inmates he knew personally." In the case of Officer

Ocasio, a prisoner who knew Plaintiff yelled out to the dorm that he was placing a bounty on Plaintiff's life. Rather than taking any action, Officer Ocasio continued to place Plaintiff in the cell with the predator, who had overheard the bounty. Such action violates the Eighth Amendment.

Finally, Defendants' contention that they could only intervene if they somehow observed the predator sexually assault and batter Plaintiff is a red herring. They both failed to intervene to stop Sergeant Wheeler from assigning Plaintiff to the predator's cell. And then Officer Hines failed to intervene to stop Officer Ocasio from walking Plaintiff to the cell. As alleged, these Defendants acted with deliberate indifferent when they knew that Sergeant Wheeler was violating a constitutional right of Plaintiff—placing her in a cell with a predator despite her classification preventing that (IPD status and awaiting a protective management determination), despite her being transgender, despite her being a victim of sexual violence, and because of his own sadistic nonpenological wish to see Plaintiff suffer—; they were in a position to intervene; and Plaintiff suffered harm as a result of that failure. *Skrtich*, 280 F.3d 1295 at 1302.

## II.   Because Defendants' conduct violated clearly established constitutional law, they are not entitled to qualified immunity.

Defendants next assert that the allegations do not show any violations of clearly established law. They are wrong.

The Eleventh Circuit has stated that a plaintiff may establish that a right is clearly established if he shows: (1) "that a materially similar case has already been decided, giving notice to the police;" (2) "that a broader, clearly established principle should control the novel facts in this situation;" or (3) "this case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Mercado v. City of Orlando*, 407 F. 3d 1152, 1159 (11th Cir. 2005). The "relevant facts are construed in the light most favorable to the non-movant—*i.e.*, the plaintiff—and the court should decide the issue based on those facts." *Simmons v. Bradshaw*, 879 F.3d 1157, 1163–64 (11th Cir. 2018).

Qualified immunity is Defendants' initial burden. *Singleton v. Dep't of Corr.*, 277 F. App'x 921, 923 (11th Cir. 2008) ("the burden of establishing an affirmative defense lies on the defendant, not on the plaintiff"); *see also* (Doc. 27 at PageID 147 (setting forth the two-part test). In their motion, Defendants incorrectly shift the burden to Plaintiff to show that Defendants acted outside the scope of their discretionary authority. (Doc. 27 at PageID 147). Because

Defendants present no argument to "demonstrate 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority,'" (*Id.*) (collecting cases), the Court should decline to consider Defendants' invocation of qualified immunity.

Even so, Defendants' efforts to hide behind qualified immunity should be rejected for two reasons. First, the law was clearly established at the time that their conduct violated the Eighth Amendment. And second, the statutory text of the 1871 Civil Rights Act expressly excludes common-law immunity.

It was clearly established at the time that if any officer actually knew about a condition that posed a substantial risk of harm, and failed to address it, they have violated the Constitution. *See Patel v. Lanier County Georgia*, 969 F.3d 1173, 1190 (11th Cir. 2020) (the "broad [deliberate indifference] principle[s] ha[ve] put all law-enforcement officials on notice that if they actually know about a condition that poses a substantial risk of serious harm and yet do nothing to address it, they violate the Constitution."); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) ("[I]t is well settled that a prison inmate has a constitutional right to be protected ... from physical assault by other inmates."); *Cottone v. Jenne*, 326

F.3d, 1352 at 1358–60 (11th Cir. 2003); *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1584 (11th Cir.1995); *LaMarca v. Turner*, 995 F.2d 1526, 1536–38 (11th Cir.1993); *Farmer*, 511 U.S. at 832. Because the FAC alleges that Defendants knew of the serious risk and were deliberately indifferent to it by failing to protect Plaintiff and failing to intervene to stop her from being placed in the cell, the FAC alleges violations of clearly established law.

Plaintiff need not find a factually identical case describing the placement of a transgender prisoner in a cell with an identified predator for punishment, and so forth, because "a broader, clearly established principle should control the novel facts," *Mercado*, 407 F. 3d at 1159, and the Eleventh Circuit and Supreme Court have held that the right is broadly clearly established when there are circumstances showing that nothing is done to address a serious risk of harm to which an officer is deliberately indifferent.

As a parting note, Plaintiff questions the availability of common-law immunity in this context. The plain text of the 1871 Civil Rights Act, which was codified into section 1983 (which is only prima facie evidence of the law), expressly precludes qualified immunity. *See Sosa v. Martin Cnty., Fla.*, 57 F.4th 1297, 1303 (11th Cir. 2023) (Jordan, J., concurring). *Rogers v. Jarrett*, 2023 WL

2706752, at *7 (5th Cir. Mar. 30, 2023) (Willett, J., concurring) ("All to say, the

Supreme Court's original justification for qualified immunity—that Congress

wouldn't have abrogated common-law immunities absent explicit language—is

faulty because the 1871 Civil Rights Act *expressly included such language*.")

(emphasis in original), cert. denied sub nom. *Rogers v. Jarrett*, 2023 WL 6378558

(U.S. Oct. 2, 2023). The Court should deny Defendants' invocation of immunity

because it is contradicted by the statutory text of the 1871 Civil Rights Act.

## <u>Conclusion</u>

For these reasons, the Court should deny Defendants' motion to dismiss

Plaintiff's Amended Complaint. (Doc. 27).

Dated: August 20, 2024.

Respectfully submitted,

/s/ *James M. Slater*
James M. Slater (FBN 111779)
Slater Legal PLLC
2296 Henderson Mill Rd NE #116
Atlanta, GA 30345
Tel: (305) 523-9023
james@slater.legal

*Attorneys for Plaintiff Joseph (Joey) Luzier, III*