UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSEPH J. LUZIER, III,

     Plaintiff,

v.                                                                    Case No.  6:24-cv-916-PGB-RMN

CLEVELAND WHEELER, FNU
LANE, RYAN HINES and FNU
OCASIO,

     Defendants.

_____/

## **ORDER**

THIS CAUSE is before the Court on Defendants Ryan Hines and Luis D.

Ocasio's Motion to Dismiss the Amended Complaint ("Motion to Dismiss," Doc.

27) and Plaintiff's Response to the Motion to Dismiss ("Response," Doc. 30). For

the following reasons, Defendants' Motion to Dismiss will be denied.

### I. FACTUAL ALLEGATIONS[1]

Plaintiff sues all Defendants for failure to protect and failure to intervene in

violation of the Eighth Amendment. (Doc. 25 at 10-15.) Plaintiff, a transgender

---

[1] The following statement of facts is derived from Plaintiff's Amended
Complaint (Doc. 25), the allegations of which this Court must take as true in ruling
on a motion to dismiss. *See Thaeter v. Palm Beach Cnty. Sheriff's Office,* 449 F.3d 1342,
1352 (11th Cir. 2006).

woman, alleges that, on August 25, 2020, she was a prisoner at Tomoka Correctional Institution ("Tomoka CI"), and while Plaintiff and Defendants Hines, Ocasio, and Sergeant Cleveland Wheeler were in the E Dormitory Sergeant's Office, Defendant Wheeler looked Plaintiff up in the FDOC system and learned of her criminal charges. (Doc. 25 at 3.) Defendants Wheeler, Ocasio, and Hines also learned that Plaintiff was a registered sex offender and had a conviction related to battery on a law enforcement officer. (*Id.* at 2-3.) Defendant Wheeler told Plaintiff that he was going to find her "a perfect bunky." (*Id.* at 4.) Pursuant to Florida Administrative Code Rule 33.602.221, Plaintiff, as a transgender woman in a men's prison, was supposed to remain in a cell pending review for placement in protective management. (*Id.* at 3.)

After reviewing the FDOC database, Defendant Wheeler told Plaintiff that he would place her in cell E3110 with inmate Rene Rivas ("Rivas"). (*Id.* at 4.) The FDOC system classified Rivas as an "Identified Predator" ("IPD") and Plaintiff as an "Identified Prey" ("IYP"). (*Id.*) FDOC rules prohibit IPY and IPD prisoners from being housed together, which Defendants knew. (*Id.*) Rivas previously had been the subject of two sexual battery investigations. (*Id.*)

Defendant Wheeler told Plaintiff that Rivas had a documented history of sexually assaulting his cellmates and that the two would get along well, implying that he was sending Plaintiff to Rivas's cell to be sexually assaulted. (*Id.*)

Defendants Hines and Ocasio were present during this conversation but did not do anything to stop Defendant Wheeler from placing Plaintiff in Rivas' cell. (*Id.*) Defendant Wheeler purposefully selected Rivas' cell because he believed Rivas would sexually assault Plaintiff. (*Id.*)

While they were still in the Sergeant's Office, Plaintiff told Defendants that he had previously been sexually assaulted, was afraid of being placed with Rivas, and did not want to be placed with Rivas because Defendant Wheeler had said she was being placed with Rivas with the understanding she would be sexually assaulted. (*Id.* at 5.) Defendant Wheeler responded that Plaintiff had no choice, and if she refused to be placed with Rivas, Defendant Wheeler would use chemical agents on her and force her into the cell. (*Id.*) Defendants Ocasio and Hines were present during this conversation and did not do anything to stop Defendant Wheeler from making threats or take any steps to prevent Plaintiff from being placed in the cell with Rivas. (*Id.*)

Both bunks in cell E3110 were already assigned, but Defendant Wheeler overrode the system so he could place Plaintiff in the cell. (*Id.* at 5-6.) After the conversation in the Sergeant's Office, Defendant Ocasio escorted  Plaintiff to Wing 3. (*Id.* at 6.) At that time, Kenneth McElwaney ("McElwaney") yelled from his cell that he was putting a $2,500 "hit" on Plaintiff's life because Plaintiff had previously reported him for sexual assault. (*Id.*) McElwaney's "hit" was heard by Defendant

3

Ocasio and Rivas and throughout Wing 3. (*Id.*)

Plaintiff told Defendant Ocasio that he was afraid to be placed in Rivas's cell, and Defendant Ocasio responded that he did not "give a shit." (*Id.* at 6-7.) Defendant Ocasio placed Plaintiff in the cell with Rivas although he knew Plaintiff was being evaluated for protective management status, Plaintiff was transgender and an IPY, Rivas was suspected of two other sexual batteries and was an IPD, Defendant Wheeler overrode the system to place Plaintiff in Rivas' cell so she would be sexually assaulted, and McElwaney had placed a bounty on Plaintiff's life. (*Id.* at 7.)

Defendant Lane then came on shift in Wing 3. (*Id.* at 7.) Defendant Lane knew about the hit on Plaintiff's life and that Defendants Wheeler, Hines, and Ocasio had intentionally placed Plaintiff in Rivas' cell even though Plaintiff was in pending protective management status, Rivas had a history of sexual batteries, and the FDOC rules prohibited them being in the same cell. (*Id.*) Defendant Lane also knew that Plaintiff had been placed in Rivas' cell so he could sexually assault Plaintiff. (*Id.*)

Defendant Lane ordered everyone to strip to their boxers for showers. (*Id.* at 8.) Plaintiff showed Defendant Lane a pass authorizing her to shower separately under FDOC policy. (*Id.*) Defendant Lane told Plaintiff that he did not honor transgender people's rights. (*Id.*) Defendant Lane forced Plaintiff, upon threat of

being subjected to chemical agents, to shower with Rivas in a two-person shower that was locked. (*Id.*)

After Plaintiff and Rivas returned to their cell, Rivas forced Plaintiff upon fear of death and bodily injury to submit to anal sex and digital penetration and to perform oral sex on him. (*Id.* at 8-9.) Rivas threatened to kill Plaintiff or have Plaintiff killed if she told anyone. (*Id.* at 9.) Plaintiff did not call for help because she thought Defendants would ignore her pleas since they purposely placed her in the cell with Rivas. (*Id.*)

The following day, Plaintiff declared a psychological emergency and refused to enter the cell when staff came to conduct maintenance. (*Id.*) Defendant Hines threatened to administer a chemical agent on Plaintiff if she did not return to the cell. (*Id.*) Sergeant Owen came to the cell because Plaintiff continued to refuse to go back into it. (*Id.*) Plaintiff told Sergeant Owen that he needed to file a Prison Rape Elimination Act ("PREA") report regarding what had happened in the cell with Rivas. (*Id.*)

Plaintiff was examined by a Sexual Assault Response Team, DNA evidence was sent to the Florida Department of Law Enforcement, and the FDOC Office of the Inspector General investigated Plaintiff's allegations. (*Id.*) The DNA results supported Plaintiff's contention that Rivas sexually assaulted him, and Rivas was charged with sexual battery. (*Id*. at 10.)

## II. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party.  *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).  Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## III. ANALYSIS

Defendants Ocasio and Hines assert that Plaintiff has failed to state a claim

upon which relief may be granted for failure to intervene and failure to protect. (Doc. 27 at 5-12.) Specifically, Defendants argue that Plaintiff has not alleged sufficient facts to establish that they were aware that Plaintiff faced a substantial risk of serious harm or were in a position to intervene. (*Id.* at 7-9.) Defendants further contend that they are entitled to qualified immunity because Plaintiff has not demonstrated that they violated her constitutional rights. (*Id.* at 9-10.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (quotation omitted). To be entitled to qualified immunity, a government official first must demonstrate that "'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988) (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983)). If the defendant satisfies this burden, then the Court must grant qualified immunity unless the plaintiff can demonstrate first, that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the officers; and, second, that it was clearly established at the time of the incident that the actions of the defendant were unconstitutional. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also McCullough v. Antolini*, 559 F.3d

1201, 1205 (11th Cir. 2009). Courts are permitted to exercise discretion in determining which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *See Pearson*, 555 U.S. at 236.

Based on the allegations in the Amended Complaint, the Court concludes that Defendants were acting in the scope of their discretionary authority when the incidents occurred. Consequently, the Court next considers whether Plaintiff has sufficiently alleged a constitutional violation against Defendants based on their failure to protect and intervene.

"Prison officials have an obligation to protect prisoners from violence inflicted upon them by other prisoners." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). "It is well settled that prison officials must take reasonable measures to guarantee the safety of the inmates, and a prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment [only] if the official is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (citations and quotations omitted). To prevail on a failure-to-protect claim brought under § 1983, the plaintiff must show: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the [constitutional] violation." *Brooks v.*

*Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015).

"Deliberate indifference has two components: one subjective and one objective." *Mosley v. Zachery*, 966 F.3d 1265, 1270 (11th Cir. 2020) (quotation omitted). A prisoner must establish "'both that [1] the defendant actually (subjectively) knew that an inmate faced a substantial risk of serious harm and that [2] the defendant disregarded that known risk by failing to respond to it in an (objectively) reasonable manner.'" *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021) (quoting *Mosley*, 966 F.3d at 1270). "[O]fficials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Marbury*, 936 F.3d at 1227 (quotation marks omitted).

Likewise, "[p]rison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. However, in order for liability to attach, the officers must have been in a position to intervene." *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010) (citations omitted).

Here, the Amended Complaint alleges that Defendant Wheeler told Plaintiff, in Defendants Ocasio and Hines' presence, that Rivas had a documented history of sexually assaulting his cellmates and that the two would get along well, implying that he was sending Plaintiff to Rivas's cell to be sexually assaulted. Plaintiff told Defendants Hines and Ocasio that she had been sexually assaulted

before, was afraid of being placed in a cell with Rivas, and did not want to be placed with Rivas because Defendant Wheeler said he was placing her there so Rivas would sexually assault her. Defendant Wheeler threatened to use chemical spray on Plaintiff if she refused to be placed in the cell with Rivas. Defendants Ocasio and Hines heard Defendant Wheeler's statements and did not do anything to stop Plaintiff from being placed in the cell with Rivas. Thereafter, Defendant Ocasio escorted Plaintiff to Rivas' cell and forced her into the cell although Plaintiff told Defendant Ocasio that she was afraid and Defendant Ocasio knew that (1) Plaintiff was transgender, an IPY, and was being evaluated for protective management status, (2) Rivas, an IPD, was suspected of two other sexual batteries, and (3) Defendant Wheeler overrode the system to place Plaintiff in Rivas' cell so she would be sexually assaulted. Plaintiff was then sexually assaulted by Rivas on the same day she was placed in Rivas' cell.

From these allegations, Plaintiff has sufficiently alleged that Defendants Hines and Ocasio knew that Plaintiff faced a substantial risk of being sexually assaulted (serious harm) if placed in the cell with Rivas. Further, despite knowing of Rivas' sexual assault history and IPD status, Defendant Wheeler's purpose for placing Plaintiff in Rivas' cell, and Plaintiff's transgender and protective management status and fear of being placed in Rivas' cell, Defendants Hines and Ocasio took no steps to prevent Plaintiff from being placed there nor did they

intervene in her cell placement.  Consequently, the Court concludes that Plaintiff

has sufficiently stated a claim against Defendants Hines and Ocasio for failure to

protect and failure to intervene. Therefore, the Court concludes that Defendants

Hines and Ocasio are not entitled to qualified immunity at this time and will deny

Defendants' Motion to Dismiss.

## IV.  CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants Ocasio and Hines' Motion to Dismiss the Amended
   Complaint (Doc. 27) is **DENIED**.

2. Defendants Hines and Ocasio shall file an answer within **FOURTEEN**
   **(14) DAYS** from the date of this Order.

**DONE** and **ORDERED** in Orlando, Florida on October 16, 2024.


_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE



Copies furnished to:

Counsel of Record